IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **VALDEZ LAMONT JORDAN, B29482,** | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | Case No. 25-cv-1646-MAB |
| vs. | ) ) | |
| **CARISSA LUKING, MELISSA WISE,** | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM & ORDER**

**BEATTY, Magistrate Judge:**

Plaintiff Valdez Lamont Jordan, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Graham Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Lawrence Correctional Center. (Doc. 1). Specifically, Plaintiff challenges a lapse in care from August of 2022-spring of 2023, and he challenges his transfer in April of 2023 despite a medical hold. Plaintiff acknowledges at the end of the pleading that this case is an attempt to revive claims from *Jordan v. Luking, et al.*, Case No. 22-cv-3041-MAB, a case before the undersigned that was dismissed in August of 2025 for Plaintiff's failure to exhaust his administrative remedies.

The Complaint (Doc. 1) is now before the Court[1] for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner

---

[1] The Court has jurisdiction to resolve Plaintiff's motions and to screen his Complaint in light of his consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' and Wexford's

1

complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

Plaintiff generally alleges that during the relevant time period he suffered from chronic back pain, a mass on his head, and a chronic sore throat (which began in June of 2022 and persisted through his transfer in April of 2023). Wise and Luking actively treated his conditions from February of 2022 through August of 2022, assessing him, sending him to specialists, and directing a variety of testing and follow-up care. However, on July 27, 2022, Defendant Luking informed Plaintiff that two non-party administrators intended to truncate his access to the healthcare unit unless he signed a consent form.

Shortly after receiving this information from Luking, in August of 2022, Plaintiff began to experience problems accessing care. He was denied admittance to two physical therapy appointments based on his refusal to sign a consent form, and he was informed that all future physical therapy appointments would be cancelled if he did not sign. He

---

limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandums of Understanding between the Illinois Department of Corrections and Wexford and this Court.

alleges that Luking ultimately cancelled his appointments despite knowing he was in pain.

Plaintiff then claims that in August or September of 2022, he sent a written follow-up request to Wise about blood test results concerning his persistent sore throat, but he got no response. He alleges between September 2022 and January 30, 2023, he submitted 17 requests slips for various issues, and got 14 call passes, but was ultimately only seen twice by a nurse. On February 3, 2023, Plaintiff was seen by a nurse about his throat and was told he would be referred to providers and tested for H. Pylori.

On February 6, 2023, after a call with an attorney, Plaintiff was escorted to be seen by Wise and Luking. He informed them of his ongoing issues, and they expressed concern and discussed treatment options. (Doc. 1 at 7). Luking asked Plaintiff if he would be willing to go out on a writ, and he informed her his last writ did not occur because of the consent form issue. Plaintiff alleged he was never called for follow-up care in February of 2023. On March 29, 2023, he saw a nurse who said she would renew the recommendation he be seen.

On April 11, 2023, Plaintiff saw Luking who discovered a previous nurse had not properly performed tests. She reordered tests and confirmed Plaintiff still had pending writs for his back pain. On April 19, 2023, the tests Luking ordered were performed. However, on April 27, 2023, Plaintiff was transferred from Lawrence to Pinckneyville before he received the results or any further treatment.

Subsequently, Plaintiff learned that he had H. Pylori and was treated at Pinckneyville. Over the course of a year and a half at Pinckneyville, he eventually

3

received extensive treatment that helped alleviate his issues. He faults Defendants Luking and Wise for allowing him to be transferred despite knowing he was in ongoing pain, and also for allowing treatment to be interfered with between August of 2022 and April of 2023. He alleges the delay or denial of care caused prolonged suffering.

Based on the allegations in the Complaint, the Court designates the following claims:

> **Claim 1:** Eighth Amendment deliberate indifference claim against Defendants Wise and Luking for allowing delays or disruption of care from August 2022 through February 2023;
>
> **Claim 2:** Eighth Amendment deliberate indifference claim against Defendants Wise and Luking for allowing Plaintiff's transfer despite his ongoing medical issues.

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## DISCUSSION

To the extent that Plaintiff may be attempting to revive claims that were dismissed in his earlier case, if his status on exhaustion as to those claims has not changed, he cannot refile the claims. Approximately a week before Plaintiff filed this new complaint, the undersigned issued an exhaustion determination about claims against the same two defendants. In issuing that decision, the Court reviewed seven grievances that the parties

deemed relevant, and it found that six of the seven were not adequate to exhaust any claim against the named defendants. Those same issues will not be relitigated in this case, because the case law in the Seventh Circuit holds that prior exhaustion determinations have preclusive effect on the future re-litigation of unchanged facts. *See, e.g., Medford v. Smith*, 2019 WL 6531125 at *4 (S.D. Ill. 2019) (applying collateral estoppel to the second of two parallel cases where in the first case a District Judge had already determined that the inmate had not filed *any* adequate grievances at the jail about any issue); *Shaffer v. Kraemer*, 2021 WL 5113986 at * 3 (S.D. Ind. Nov. 3, 2021) (finding that an inmate's claims in a second lawsuit were barred by collateral estoppel where his previous case was dismissed for unsuccessful completion of administrative remedies, and he had no evidence he made additional efforts to exhaust his claims before filing a second lawsuit on the same issue that named two additional officers as defendants). The Seventh Circuit also found in *Jackson v. Murphy*, 468 Fed. App'x 616, 619 (7th Cir. 2012) that a court did not abuse its discretion by *sua sponte* applying collateral estoppel on the issue of exhaustion where the repetition of the same affirmative defense was easy to anticipate, the parties were the same, and a final judgment was already reached on the issue.

There is one obvious exception in this case. The undersigned found that Plaintiff had a single grievance dated May 18, 2023, concerning dissatisfaction with his transfer, and delays with medical care from February of 2023-April of 2023. The grievance did not receive a final determination until after Plaintiff had filed the complaint, so as to the limited allegations in that grievance, Plaintiff had sued first and exhausted later. *Jordan v. Wise, et al.*, Case No. 22-cv-3041-MAB (Aug. 21, 2025 Order; Doc. 71 at pp. 15-16). This

5

is clearly the grievance that Plaintiff focuses on with the refiling of this case because he argues that the decision was issued on August 23, 2023, and he had two years from that date to re-file this new suit under Illinois' statute of limitations. (Doc. 1 at 3). He goes on to allege that the two-year period fell on Saturday, August 23, 2025, and thus should be treated as Monday, August 25, 2025. He states under the prison mailbox rule, he tendered the present complaint for filing on August 25, 2025, and thus his complaint in the present matter is timely.

The Court will assume at this preliminary stage that Plaintiff may be presenting claims in this case that are not barred by claim preclusion, and that fit within the statute of limitations. However, the parties may contest both issues further later in the case.

### Claim 1

An Eighth Amendment claim arising from the denial of medical care consists of an objective and a subjective component. *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir. 2010). A plaintiff must show that he suffered from a serious medical condition (i.e., an objective standard) and also show that each defendant responded with deliberate indifference (i.e., a subjective standard). *Id.* To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Neither medical malpractice, nor mere disagreement with a doctor's medical judgment will amount to deliberate indifference. *Id.* Additionally, an inmate is not entitled to demand specific care, and a medical professional may choose from a range of acceptable courses of care. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019).

The plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). Deliberate indifference involves "intentional or reckless conduct, not mere negligence." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (*citing Gayton,* 593 F.3d at 620). A choice to pursue an easier or less effective course of treatment, or a non-trivial delay in treating serious pain may also support a claim of deliberate indifference. *Lockett v. Bonson,* 937 F.3d 1016, 1023 (7th Cir. 2019). A delay in treatment which serves no penological interest can support a claim of deliberate indifference, though it must be supported by some verifying evidence that the delay caused specific harm. *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013).

Here, Plaintiff faults Defendants Wise and Luking for allowing delays or an outright denial of needed care from August of 2022 through April of 2023. However, he clearly admits that in February of 2023 he was seen by Wise and Luking and plans for treatment were established. When he saw Luking again in April of 2023 and informed her that he was still waiting for treatment, she investigated and explained that a nurse did not perform proper tests as Luking had directed. This suggests that from February to April, the problem was out of Luking and Wise's control, and the lapse was not known to them. Plaintiff explained submitting countless request slips from September 2022 to January 2023, but he does not mention efforts to seek out care from February to April of 2023 specifically from Wise or Luking. Against the facts available, Plaintiff can only plausibly fault Wise and Luking for the lapse from August of 2022 to February of 2023.

There is another wrinkle worth mention. Plaintiff plainly states that he missed physical therapy and other appointments and a writ during this period because he refused to sign a consent form. An inmate cannot manufacture his own Eighth Amendment violation by intentionally hindering care. *See e.g., Poole v. Issacs*, 703 F.3d 1024, 1027-28 (7th Cir. 2012) (finding that a healthcare administrator was not liable for deliberate indifference where she insisted the inmate pay a $2 co-pay before receiving treatment for dental pain, and the inmate refused, thus delaying his own care); *Pinkston v. Madry*, 440 F.3d 879, 892 (7th Cir. 2006) (finding no deliberate indifference where the inmate himself delayed in seeking care, and then was repeatedly uncooperative with the care offered); *Rodriguez v. Briley,* 403 F.3d 952, 953 (7th Cir. 2005) (an inmate cannot engineer an Eighth Amendment violation related to adequate nutrition by refusing meals); *Cherry v. Berge*, 98 Fed. App'x 513, 515 (7th Cir. 2004) (finding that staff were not deliberately indifferent for multiple occasions of failing to distribute two types of medications because Plaintiff understood and was physically able to comply with rules for medication distribution, but consciously refused to follow the protocol). To the extent that Plaintiff's own conduct contributed to the lapse in care, it is certainly possible this claim will fail later in the case when more information is available.

## Claim 2

In addition to the lapse in care, Plaintiff faults Wise and Luking for allowing him to be transferred from Lawrence to Pinckneyville at a time when he had medical needs that demanded ongoing care. He specifically says that they should have opposed his transfer. Upon transfer he had to wait about 14 days to get initial treatment for his throat,

and a month or so before he could be seen by a doctor to discuss rescheduling care for his throat pain, back pain, and the mass on his head. At that point, the doctor agreed he should be scheduled for physical therapy and to see specialists, but he did not begin specialist visits until January of 2024, about six months after his transfer. By Plaintiff's own allegations, prior to his transfer Wise and Luking had advised that he had medical writs pending for specialist appointments. Thus, the very narrow question is whether Wise and Luking had any control over the transfer, and if they did, whether the delay in care caused by the transfer can be linked to discrete harm.

## DISPOSITION

**Claims 1 and 2** may proceed beyond initial review against Defendants Wise and Luking as limited by this Order.

The Clerk shall prepare for Defendants Wise and Luking: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to these Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not

9

known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **REMINDED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

The Clerk of Court is also **DIRECTED** to enter the standard HIPAA protective order in this case.

**IT IS SO ORDERED.**

**Dated: November 4, 2025**

/s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

## **Notice to Plaintiff**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.